**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
THOMASVILLE DIVISION**

| | | |
|---|---|---|
| OKEY L. CRUM, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. 6:06-CV-66 (WLS) |
| | * | 42 U.S.C. § 1983 |
| THOMAS COUNTY JAIL, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## REPORT & RECOMMENDATION

Before the court is the Motion for Summary Judgment filed by the Defendants on March 2, 2007. (R-82). Plaintiff was notified of his right to respond to Defendants' Motion and said response was filed on April 12, 2007. (R-91). Defendants filed a reply to Plaintiff's response on May 2, 2007 (R-92), to which Plaintiff filed another response on June 12, 2007 (R-93).

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure, dealing with motions for summary judgment, provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed. R. .Civ. P. 56 (c);*

*Warrior Tombigee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).  While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution.  *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993).  In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party.  *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct.

2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384. 1387-88 (11th Cir.1991), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). Motions for summary judgment are normally decided based on the pleadings, and the discovery of record, together with any affidavits submitted by the parties, in deciding whether summary judgment is appropriate under Rule 56. The party upon whom a Motion for Summary Judgment has been filed has the right to file affidavits or other material in opposition to a summary judgment motion. If he fails or refuses to file any affidavits or other materials in opposition to the Motion for Summary Judgment, a Final Judgment may be rendered against him if otherwise appropriate under law. Specifically, Federal Rule of Civil Procedure 56(e) provides, that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. **When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by**

**affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party**. (emphasis added).

## DISCUSSION

Section 1983 of Title 42 of the United States Code states, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to prevail, the Plaintiff must establish both that the Defendants deprived him some constitutionally prescribed right and that the deprivation occurred under color of state law. *See Arrington v. Cobb County,* 139 F.3d 865, 872 (11th Cir.1998).

A successful § 1983 action requires that the plaintiff show he was deprived of a federal right by a person acting under color of state law. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Brothers, Inc v. Brooks*, 436 U.S. 149, 155-56, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978)). The Supreme Court has repeatedly insisted that, "the under-color-of-state-law element of 1983 excludes from its reach merely private conduct, no matter

how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. V. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985 (1999) (citations omitted).

At the time of the filing of this complaint, Plaintiff was an inmate at the Thomas County Jail. He filed this civil action pursuant to 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights in various and numerous ways.

In his original complaint, filed on October 11, 2006, Plaintiff presents six claims against individuals and seven claims against the Thomas County jail Administration. (R-2). Plaintiff alleges that his constitutional rights were violated when: 1) Mrs. Bradley (medical officer) denied his request to see "mental health" and also claims that his "health has been effected by the black mold[1] in the dorm"; 2) the jail administrator, Mrs. Williams, refused to give him an "indigent package" to do legal work and write his family until he filed a grievance; 3) Officer J. Jackson denied Plaintiff access to the law library, treating Plaintiff with prejudice because said officer allowed a black inmate to go but not Plaintiff, and refused to give plaintiff a grievance form; 4) Officer W. Cason denied Plaintiff access to the law library several times, also treating Plaintiff with prejudice because said officer allowed a black inmate to go to the law library but not Plaintiff; 5) Officer Haggins refused to take or deliver a grievance form; 6) Officer Fan refused to send a copy of Plaintiff's grievance form back to him as requested. (R-2, p.4). In addition, Plaintiff alleges that the Thomas County Jail Administration violated his rights by: 1) doing nothing to help inmates "get to the law library," by failing to "enforce [inmate] rights to the law library," and by failing to supply an

---

[1] Plaintiff alleges that the "black mold" is "all around the ventilation system." (R-2, p.4).

adequate law library; 2) failing to serve lunches on the weekends; 3) holding $10.00 of inmates' money "in case [they] need to see a doctor"; 4) putting inmates at the "mercy of the [administration] for doctor[s] to show up, failing to have "R.N. nurses on duty at all," having guards pass out medication and deny[ing] over the counter medicines at will; 5) failing to give him grievance forms, causing him to create his own; 6) denying him an indigent package, which Plaintiff claims stopped him from writing his lawyer and family, and complains that inmates have no access to their lawyers by phone and no access to legal aid; and 7) failing to separate felony offenders from misdemeanor offenders.  (R-2).  In requesting relief, Plaintiff requests that the court "fix the administration" and requests that legal books be provided to the law library.  (R-2, p.6).  Plaintiff also seeks monetary damages in the amount of 9.3 million dollars (for unspecified damages), plus actual damages in the amount of $60,000 and punitive damages in the amount of 3.5 million dollars.  *Id.*

Plaintiff filed Motions to Amend on October 20, 2006 (R-25) and October 23, 2006 (R-32), both of which were granted.  These motions added several claims.  In his October 20, 2006, Motion to Amend, Plaintiff states: 1) on October 9, 2006, Officer Bradley denied Plaintiff medical treatment; 2) on October 16, 2006, Officer Garlin denied Plaintiff access to the law library and denied Plaintiff a grievance form and that Sgt. Williams refused "to come to block to solve problem"; 3) on October 16, 2006, Sgt. Pam Davis refused to give Plaintiff a grievance form; 4) that he was placed in the "hole" by J. Jackson "with prejudice," and that Plaintiff's request to speak with Sgt. Owens was refused; 5) that he spent "7 day[s] in [the] hole without a hearing or due process"; 6) that the "administration runs out of cosmetic

(hygens) (sic) constantly; 7) the Administration has not had a grievance hearing with Plaintiff since September 22, 2006; 8) he was denied medical care on or about October 10, 2006; 9) Mrs. Fan has failed to return any of Plaintiff's ten (10) grievances with any action taken since September 22, 2006; 10) on October 3, 2006, Plaintiff was denied a grievance form; 11) Plaintiff was treated with prejudice on October 3, 2006, when J. Jackson allowed a black inmate to go to the law library but denied Plaintiff; 12) Plaintiff was treated with prejudice on October 4, 2006, when W. Cason allowed a black inmate to go to the law library but denied Plaintiff; and 13) Sgt Owens denied Plaintiff grievance forms. (R-25). In his second amendment, filed October 23, 2006, Plaintiff states: 1) on October 16, 2006, Plaintiff requested of Mrs. Williams that Plaintiff be allowed to go to the law library and was informed that Sgt. Owens would have to give that permission, Sgt. Owens thereafter failed to come see Plaintiff to grant such permission effectively denying Plaintiff access to the law library on that date; 2) that on October 17, 2006, Officer W. Cason treated Plaintiff with prejudice or bias by refusing to allow another inmate to assist him in the law library when he had allowed the same inmate to assist a black inmate; and 3) that on October 19, 2006, Plaintiff was denied the "legal aid" of another inmate by Sgt. Williams.[2] (R-32).

The Court has considered all of Plaintiff's other filings that add facts and information to the specific claims enumerated above. However, any filing that attempts to add a new Defendant or new claim, would in effect be an unauthorized amendment to his complaint and

---

[2] For the sake of clarity, the court has attempted to consolidate the claims that appear in both the complaint and amendments against the same Defendant for the same offense.

therefore will not be considered or addressed in this Report and Recommendation.

## Motion for Summary Judgment

In their Motion for Summary Judgment, Defendants argue that there is no genuine issue as to any material fact such that Defendants are entitled to judgment in their favor as a matter of law. Specifically, Defendant's argue: 1) that Defendant Bradley, in her individual capacity, is entitled to summary judgment as Plaintiff failed to establish deliberate indifference regarding his claims of denial of mental health treatment ; 2) that all Defendants, in their individual capacities, are entitled to summary judgment regarding Plaintiff's claims of deliberate indifference to toxic mold; 3) Plaintiff's claims regarding his trust account, number of meals served on the weekends, absence of registered nurse at the Jail, Plaintiff's lack of access to legal aid, inadequate access to Plaintiff's criminal attorney, Plaintiff's claims regarding the separation of felons and misdemeanants, and specific allegations against Defendants Fan and Haggins regarding the grievance system, are all barred by qualified immunity; 4) that Plaintiff was given adequate access to the courts; 5) that Defendant Jackson is entitled to summary judgment, in his individual capacity, regarding Plaintiff's allegations of racial discrimination; 6) that Defendant Powell, in his individual capacity, is entitled to summary judgment because he cannot be held liable on a theory of *respondeat superior* for § 1983 claims; 7) that Defendant Thomas County Jail is entitled to summary judgment as to all allegations as it is not an entity capable of being sued; and 8) that all Defendants, in their official capacities, are entitled to summary judgment as to all of Plaintiff's allegations. (R-84). In addition to their Motion and Brief, Defendants submitted a Statement of Undisputed

Material Facts (R-83), Affidavits (R-85, 86, 87, 88 and 89), a list of Federal Materials Available to Plaintiff at the Thomas County Jail (R-89-2), and the "Sign-In Log" which documents who checked out the Federal Rules Book kept in the control room at the jail. (R-89-3).

**Access to the Courts**

## I. Law Library

Plaintiff Crum made several claims that, while unidentified by Plaintiff as such, raised a question as to whether his constitutional right to due process was violated. Plaintiff Crum claimed that he was denied access to the courts. Specifically, Plaintiff asserted that he was not provided with adequate legal supplies and that various Defendants denied his "constitutional right to access to the law library." As to his multiple claims regarding access to the law library, the Eleventh Circuit Court of Appeals addressed this very issue in *Akins v. U.S.*, 204 F.3d 1086 (11th Cir. 2000), stating:

> Although it is well established that prisoners have a constitutional right of access to the courts, the Supreme Court has clarified its decision in *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), stating that access to the law libraries is not required of prisons, but rather is one way of assuring the constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment. The inmate must show that this inability caused an actual harm, or in other words, unconstitutionally prevented him from exercising that fundamental right of access to the courts in order to attack his sentence or to challenge the conditions of his confinement. *Lewis*, 518 U.S. at 355.

*Akins*, 204 F.3d at 1090. Thus, *Akins* makes clear that Plaintiff has no constitutional right to access to a law library, the constitutional right in question is "access to the courts." Plaintiff's complaints appear to be that he was disadvantaged in litigating this action, however, "the right of access to the courts guarantees an inmate the ability to file a lawsuit that directly or collaterally attacks the inmate's sentence or challenges the conditions of an inmate's confinement," but inmates are not guaranteed "the wherewithal to transform themselves into litigating engines." *Lewis v. Casey*, 518 U.S. 343, 355, 116 S.Ct. 2174 (1996).

In his Affidavit, Officer Johnny Jackson responds to Plaintiff's accusations that Officer Jackson denied him access to the law library with prejudice because Plaintiff is white. (R-86). Defendant Jackson, who identifies himself as a black male, states that he does not have the authority to give inmates permission to use the library at the jail. *Id*. Defendant Jackson states that he must ask his supervisor, Sergeant Linda Owens, identified as a white female, before responding to the inmate request. *Id*. Officer Jackson states that on one occasion during Plaintiff Crum's recent incarceration, Plaintiff approached Defendant Jackson and requested permission to use the law library. *Id*. Defendant Jackson states that he relayed the request the same day to Defendant Owens. *Id*. Defendant Owens stated that Plaintiff had already used the library that same day and therefore, denied Plaintiff's request. *Id*. Defendant Jackson stated that he relayed such to Plaintiff. *Id*.

The second Affidavit of Virginia Williams states that the federal rules book is kept in the control room at the Jail and that in order to gain access to the book, inmates must sign in on a log book. (R-89). Defendant Williams states that the "sign in policy is intended to

prevent damage by creating inmate accountability for the condition of the book when it is returned. As a result only one inmate may access the federal rules book at any given time." *Id*. Attached to Defendant William's second Affidavit was Exhibit B, "a true and correct copy of the sign-in log book for the federal rules book." (R-89 and 89-3). Defendant Williams states that during Plaintiff's latest incarceration he signed in for the federal rules book on eight occasions, "more than any other inmate." (R-89). An examination the log book does indicate that Plaintiff Crum checked out the Federal Rules on eight occasions, September 12, 2006, the 4th, 18th, 23rd, and 24th, of October 2006, the 3rd and 6th of November 2006, and on January 31, 2007. (R-89-3). Plaintiff Crum, however, disputes that he was in the law library on January 31, 2007. (R-91, p.17). Regardless, the Affidavit of Defendant Williams and the log sheet provide substantial evidence that Plaintiff did access the Federal Rules several times. (R-89, and R-89-3). Furthermore, said documents provide evidence that Plaintiff was allowed to check out said book as often, if not more, than any of the black inmates he listed in his allegations in his attempt to demonstrate racial discrimination. *Id*.

Plaintiff makes bare assertions of prejudice, supplying no evidence to support his claims that any employee[3] of the Jail denied him access to the law library based upon his race. In fact, it has been pled in an Affidavit suppled by the Defendants that the person capable of giving Plaintiff access to the law library is of the same race. (R-86, 89). Additionally, Defendants provided evidence in the form of a sign-in log that shows that Plaintiff Crum had

---

[3] Plaintiff also made the bare assertion that Officer Garlin denied his access to the law library, though he doesn't state that said access was denied based upon race. (R-2)

as much, if not more, access to the law library and the Federal Rules, than any other inmate black or white. (R-89) When countered with actual evidence that no bias existed based on race, Plaintiff failed completely to provide any evidence to refute such and has failed to show any indication of prejudice or bias based upon race.

Although Plaintiff complains of the adequacy of the law library and the denial of "indigent packages," he has failed to provide any evidence that he was harmed by the inadequacies alleged. Defendants, on the other hand, provided a complete list of the resources available to Plaintiff in the law library and that multiple dates Plaintiff accessed said materials. (R-89 and 89-2). Plaintiff has also failed to show that the lack of access to the law library on the dates his requests were denied caused him actual harm. Furthermore, the sheer volume of the motions and other documents Plaintiff has filed in furtherance of his claims[4] contradicts any allegation or implication that he was denied access to the courts or denied indigent packages (paper, stamps, etc.). Therefore, no genuine issue of material fact remains as to access of the courts, specifically regarding prejudice or bias, access, and adequacy of the law library. Thus, it is recommended that Defendant be granted summary judgment as to all claims related to the adequacy of the law library, bias or prejudice in denial of access to the law library, and denial of access to the library on the specific dates pled by Plaintiff.

---

[4] Plaintiff filed at least forty-seven (47) motions, replies and responses in this case during the four months he was incarcerated at the Thomas County Jail. In addition, Plaintiff also filed a second §1983 action on November 6, 2006, which is notable as to this issue because he filed at least twenty (20) motions within a month of initiating that suit. (See Case No. 6:06-CV-70). Plaintiff's staggering sixty-seven motions in under four months belies his argument that he was not given indigent packages or supplies to file documents.

## II. Legal Aid

Plaintiff made several claims regarding lack of access to legal aid and "prejudice"[5] in that individuals denied him the legal assistance of another inmate. Although Plaintiff fails to specify where he believes this right stems from, presumably Plaintiff is alleging a violation of his right to access the courts. Plaintiff mistakenly asserted that the constitution entitled him to appointed counsel in all phases of his civil case. (R-19). After considering the merits of Plaintiff's claims and the complexity of the issues involved, the court denied <u>both</u> of Plaintiff's Motions for Appointment of Counsel (R-19 and 28), informing Plaintiff that:

> [G]enerally, no right to counsel exists in § 1983 actions. *Wahl v. McIver,* 773 F.2d 1659, 1174 (11th Cir. 1985); *Hardwick v. Ault,* 517 F.2d 295, 298 (5th Cir. 1975); *Mekdici v. Merrel Nat'l Lab.,* 711 F.2d 1510, 1522 n. 19 (11th Cir.1983). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 14, 17 (5th Cir. 1982); *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982); *Ulmer v. Chancellor*, 691 F.2d 209 (5th Ci r. 1982).

(R-24 and 33). In Plaintiff's "Motion for Legal Aid," Plaintiff requested that the court grant his request for the assistance of "other inmates who are knowledgeable in law and legal research." (R-28). The court informed Plaintiff that while he may seek the assistance of other inmates, a "jailhouse lawyer" would not be allowed to represent Plaintiff in this action. *See Johnson v. Avery*, 393 U.S. 483, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969); *Wolff v. McDonnell*, 418 U.S. 539, 577-580, 94 S. Ct. 2963, 2985-2986, 41 L. Ed. 2d 935 (1974); 28

---

[5] Plaintiff makes the bare assertion that Officer Cason treated Plaintiff with prejudice or bias by refusing to allow another inmate to assist him in the law library when he had allowed the same inmate to assist a black inmate (R-32).

U.S.C. § 1654; and *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) (citing *United States v. Taylor*, 569 F.2d 448 (7th Cir.), *cert denied,* 435 U.S. 952 (1978). The court further informed Plaintiff that it found "no authority which would allow it to *compel* his custodian to give him access to a particular inmate for assistance and advice." (R-33). Thus, as these claims were previously addressed by the court, it is recommended that any and all claims related to the denial of legal assistance or "legal aid" to Plaintiff by another inmate be DISMISSED as frivolous and res judicata.

### III. Access to Plaintiff's Criminal Attorney

In addition, Plaintiff alleges that he had inadequate access to his criminal attorney. Specifically, Plaintiff asserts that he should have had a telephone provided in his dorm so that he could contact his attorney. (R-2 and 31).

This court is unaware of any clearly established constitutional right that requires a telephone be provided in each jail dorm. In fact, the law of this circuit indicates that restrictions upon phone usage by inmates or prisoners is reasonably related to the legitimate government interest in reducing criminal activity and harassment. *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir. 1996); *see Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259 (1987) (when a prison regulation impinges upon an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests). Plaintiff did not allege that he was refused all access to a telephone to contact his attorney. Furthermore, Plaintiff could receive visits from his attorney and correspond with his attorney through the mail. Plaintiff Crum has failed to show that any constitutional right was violated. No genuine

issue of material fact remains regarding access to the courts. For that reason, it is recommended that Defendants be granted summary judgement as to this claim.

## IV. Grievance Procedure

Plaintiff also contends that Defendants Haggins, Garlin, Owens, and Fan interfered with his right to access the courts by refusing to take and deliver a grievance forms, refusing to hold grievance hearing, and by refusing to make photocopies of grievances that Plaintiff had already delivered to officials at the Jail. Defendants, however, argue that Plaintiff failed to state a claim upon which relief may be granted because Plaintiff has no constitutional right to a grievance procedure. For the Plaintiff to prevail under 42 U.S.C. § 1983, Plaintiff must show a violation to one of his federally protected rights. Neither state law nor state policy, however, creates a federal constitutional right. *See McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994). Accordingly, the courts have held that failure of a facility to follow a state grievance procedure does not create a constitutional violation actionable under 42 U.S.C. § 1983. *Wildberger v. Bracknell*, 869 F.2d 1467, 1467-8 (11th Cir. 1989); *See McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994); *See also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (Holding that there is no legitimate claim of entitlement to a grievance procedure).

In *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993), the Eighth Circuit Court of Appeals reviewed a district court case wherein a plaintiff alleged that an officer violated his rights by failing to answer his prison grievances and by refusing to give him more than one grievance form per day. The Court concluded that the district court properly determined that the plaintiff failed to state a claim for relief, because as a matter of law, prison grievance

procedures do not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment. *Id*. (internal quotes omitted). *See also Wildberger v. Bracknell*, 869 F.2d 1467, 1467-8 (11th Cir. 1989)*; Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Dolby v. Green*, 184 Ga. App. 729 (1987), *citing Jones v. N.C. Prisoner's Union*, 433 U.S. 119, 137-138 (1977).

As there is no constitutional right to a grievance procedure, it therefore follows that the alleged failure to supply a grievance form, deliver a grievance, provide Plaintiff with copies of a grievance, or hold a grievance hearing, even if improper, cannot be remedied through 42 U.S.C. § 1983. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (holding that holding "that the federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.").

The grievance system per se is not constitutionally required. Thus, no genuine issue of material fact remains as to Plaintiff's claims regarding the grievances system. It is therefore recommended that summary judgment be grated to all Defendants as to this claim.

### Deliberate Indifference

## I. Medical Need

Plaintiff alleges that Defendant Bradley (medical officer) denied his request to see "mental health." (R-2). Plaintiff's complaint itself did not allege a specific illness but such

was pled in a later document (R-64).  In said document, Plaintiff alleged that he had been diagnosed with bipolar and anti-social disorder prior to his most recent incarceration at the Jail.  *Id*.  Plaintiff did not, however, allege a specific need for mental health treatment or provide the court with evidence of any symptoms that needed treatment.

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  429 U.S. 97, 104-105, 97 S.Ct. 285, 291, 50 L. Ed. 2d 251, (1976) rehearing denied 429 U.S. 1066, 97 S. Ct. 798, 50 L. Ed. 2d 785 (1977).  To establish that the Defendants were deliberately indifferent to a serious medical need, Plaintiff would be required to show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

In our circuit, a serious medical need is considered "one that has been diagnosed by a physician mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention."  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003), *citing Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). (Quotation marks and citation omitted).  "In either of these situations, the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm."  *Id*.  Plaintiff claims that Defendant Bradley, the medical officer at the jail, was aware of his bi-polar condition and antisocial disorder and his need for treatment.  In her Affidavit, however, Defendant Bradley states that when Plaintiff was booked into the Thomas County Jail on

August 22, 2006 (his most recent incarceration), he "was asked if he had recently seen a medical or physical doctor for any illness. Plaintiff's response was no." (R-85). Defendant Bradley also stated:

> During Plaintiff's most recent incarceration, I was passing out medication to inmates and was approached by Plaintiff who stated he wanted to go to mental health. I stated to Plaintiff that inmates at the Jail must seek mental health treatment after their release from the Jail or after transfer to prison if that inmate has a mental health case file [that] is inactive. Prior to Plaintiff's request, I was aware that plaintiff's mental health case file was inactive at the mental health treatment facility, Georgia Pines, and Plaintiff had been non-compliant with past mental health visits.

(R-85). Inmates may fill out Prisoner Medical Request Forms (PMRF), and visit with physicians that make on-campus visits with the Jail. During his latest incarceration, Plaintiff never filled out a PMRF or made any other attempt to address his alleged mental health needs with the physician that visits the Jail. (R-84). Nor has Plaintiff placed any medical records into evidence to provide proof of his alleged bi-polar disorder and antisocial disorder. Furthermore, although Plaintiff alleges that Defendants knew of his mental health problems during previous periods of incarcerations, Plaintiff fails to allege that Defendants knew that Plaintiff had a serious medical need that needed to be treated during his most recent period of incarceration. *See Spear v. Nix*, 215 Fed. Appx. 896 (11th Cir. 2007) (granting summary judgment against inmate's deliberate indifference claims because inmate made no allegations

that prison officials knew of a serious medical need).[6]

Plaintiff has completely failed to place verifying medical evidence in the record to establish the seriousness of his alleged mental disorders. Nor has Plaintiff alleged any injury or detrimental effect caused by any lack of mental health treatment. Thus, Plaintiff's claim must fail as he has failed to establish that he suffered an objectively reasonable serious medical need.

As such, Plaintiff has failed to show that the actions of the Defendants constituted deliberate indifference to his medical needs. Therefore, it appears that the Defendants have met their initial burden of showing that no genuine issue of material fact remains for determination by the trier of fact. As such, the burden shifts to the Plaintiff to rebut that presumption. Having failed to provide the court with any evidence to refute the Defendant's claims, it appears that Plaintiff has failed to establish that any issues of fact remain to be determined. It is therefore recommended that all Defendants be granted summary judgment as to all of Plaintiff's claims regarding mental health treatment.

## II. Toxic Mold

Plaintiff alleges that the Thomas County Jail was deliberately indifferent to his exposure to "toxic black mold" (R-2), and that such exposure caused him to have "sinus problems that he did not have before his incarceration in [dorm] B3" and "shortness of breath" during his work detail on a "chain gang" at the Thomas County Prison. (R-93). A

---

[6] Although this opinion was not chosen for publication, it is hereby submitted as persuasive authority pursuant to Eleventh Circuit Rule 32-2.

plaintiff who challenges the conditions of his confinement under the standard set by the Eighth Amendment, must prove that the conditions complained of constitute "cruel and unusual punishment." *U.S.C.A., Constitutional Amendment Eight.* A viable Eighth Amendment claim has both a subjective and an objective component. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994). The subjective component requires proof that the prison official have a "sufficiently culpable state of mind." *Boxer v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006); *See Wilson v. Seiter*, 501 U.S. 294, 302-03, 111 S. Ct. 2321 (1991) (The subjective component requires proof that the officials acted with subjective deliberate indifference to an inmate's health or safety). The objective component requires proof that the deprivation was sufficiently serious. *See Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 S. Ct. 995 (1992). A prison official may be held liable under the Eighth Amendment only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847, 114 S. Ct. 1970. Additionally, "under our circuit precedent about the nature of actionable injuries under the Eighth Amendment, an injury can be 'objectively, sufficiently serious' only if there is more than *de minimus* injury." *Id.* See *Johnson v. Breeden*, 280 F.3d 1308, 3121 (11th Cir. 2002).

In order to prevail on his constitutional claim and to recover in this case, Plaintiff must establish that the Defendants were deliberately indifferent to a substantial risk of serious harm. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Prison officials or prison doctors

cannot be held accountable "under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. 837, 114 S. Ct. 1979 (1994). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as infliction of punishment." *Id*. at 848. "Thus, the official must have a subjectively sufficiently culpable state of mind." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (internal citations omitted). "Likewise, in addition to the subjective awareness of the relevant risk, *Estelle* requires that plaintiff show more than mere negligence to establish a violation of the Eighth Amendment. . . ." *McElligott*, 182 F.3d 1248, 1255 (11th Cir. 1999); citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Plaintiff must first prove that the conditions complained of constitute "cruel and unusual punishment." However, in the instant action, there is absolutely no evidence that what Plaintiff claims was present in his cell and air vents was "toxic mold," only Plaintiff Crum's bare assertions. Thus, Plaintiff has failed to establish a risk of serious harm. Logically, it follows that if it has not been established that any serious risk existed, Defendants could not possibly have had subjective knowledge of a risk of serious harm.

Furthermore, Plaintiff can not show that the Defendants disregarded a serious risk, if no risk has been established. In addition, when Plaintiff complained of the mold, the Thomas County Jail administrator, John Richards, met with Plaintiff personally to discuss the alleged

mold. (R-87). In his Affidavit, Richards states that he was not aware of any toxic mold in Plaintiff's dorm or cell. *Id*. Richards also stated that "[a]s a matter of routine, to prevent living areas from becoming dirty, mildewed, or unsanitary in any way, the dorms are cleaned daily." *Id*. Said practice was in place before, during, and after Plaintiff's incarceration at the Thomas County Jail. *Id*. When Richards met with Plaintiff regarding the alleged mold, he "delivered cleaning supplies to Plaintiff and explained to him that if he had a concern his living area was dirty, he could use the cleaning supplies that [he] provided him to clean the area." *Id*. In addition, Richards stated that the Jail is equipped with a ventilation system to "regulate the comfort of the temperature of the Jail but also to reduce humidity levels." *Id*. Richards stated that to his knowledge, the ventilation system has not had any instances of failure during Plaintiff's incarceration. *Id*.

Plaintiff indicates that he contacted the Health Department in Thomas County about the alleged mold and asked them to investigate. Although Plaintiff states in his filings that the jail administrator, Richards, sent an employee from the health department away when he came to inspect the jail for mold, this allegation is untrue. As to this issue, Defendants submitted the Affidavit Bob Pontello, an employee of the State of Georgia and the Thomas County Health Department submitted. (R-92-2). In said Affidavit, Mr. Pontello states that he is an Environmental Health Specialist with the Thomas County Health Department. *Id*. Mr. Pontello states that on or around November 20, 2006, he received a letter addressed to the Health Department which bore the signature of Okey Crum Jr. and others. *Id*. In said letter, Plaintiff complained of "black mold" or "toxic mold" around the air vents at the Jail.

*Id.* In response, Mr. Pontello states that he "traveled to the Jail, on or around December 6, 2006, and met with the jailer, Mrs. Virginia Williams." *Id.* Mr. Pontello states that "[a]t no time during that meeting, or at any other time, was [he] refused access to dorm B3 at the Thomas County Jail by John Richards, Virginia Williams, or any other person." *Id.* Mr. Pontello states in his affidavit that due to personal security concerns, he opted not to access dorm B3, which was inhabited by a general population of inmates. *Id.* At the request of Defendants' counsel, Mr. Pontello returned to the Thomas County Jail "and visited dorm B3 with a group which alleviated [his] concerns regarding personal security." *Id.* Mr. Pontello indicated that while he could not determine if it was even possible for toxic mold to be present at the Thomas County Jail, he is very familiar with the common effects, like mildew, that are caused by humidity in houses and other facilities in the Thomas County area. *Id.* Mr. Pontello also stated that upon his visit, he did not "see any mold anywhere," nor did he "observe evidence of any living condition that [he] considered to be an unsanitary, deplorable or uninhabitable condition." *Id.* It therefore appears, that even though there was no evidence of toxic mold, the Defendants did not "disregard a serious risk." When Plaintiff complained of sanitary issues regarding his living conditions, the Defendants responded and attempted to rectify his complaints.

As such, Plaintiff has failed to show that the actions of the Defendants constituted deliberate indifference to his conditions of confinement. Therefore, it appears that the Defendants have met their initial burden of showing that no genuine issue of material fact remains for determination by the trier of fact. As such, the burden shifts to the Plaintiff to

rebut that presumption.  Having failed to provide the court with any evidence to refute the Defendant's  claims, it appears that Plaintiff has failed to establish that any issues of fact remain to be determined.  It is therefore recommended that all Defendants be granted summary judgment as to any claims related to the alleged "toxic mold."

## Respondeat Superior

Although Plaintiff has named Sheriff Carlton Powell as a Defendant in this case, Plaintiff has failed to allege that Defendant Powell was involved directly or indirectly in any of his claims or allegations. (R-2, 25 and 32).  It appears to be the intention of the Plaintiff, therefore, to hold Defendant Powell liable for the actions of his employees under the theory of *respondeat superior*.  Defendant Powell argues that he is entitled to summary judgment as to Plaintiff's claims against him in his individual capacity because liability cannot be based upon respondeat superior.  (R-84).

It is clear that under the law of this circuit that *respondeat superior* cannot be relied upon to state a cognizable claim against this defendant under § 1983. *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985).  *See also Monell v. Department of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  As articulated in *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990):

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of

> widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences. (Citations omitted.)

The Eleventh Circuit has further held that "[s]upervisory officials cannot be held liable for the acts of employees solely on the basis of *respondeat superior*." *Geter v. Wille,* 846 F.2d 1352, 1354 (11th Cir.1988). To succeed on a § 1983 cause of action against Defendant Sheriff Powell, therefore, Plaintiff must show that his constitutional rights were violated by that specific defendant to be entitled to relief on his claim. Plaintiff has thoroughly failed to do so.

Because the Plaintiff has failed to establish in any of his pleadings how Defendant Powell, himself, violated any of Plaintiff's constitutional rights in his individual capacity, Defendant Powell is entitled to judgment as a matter of law. Therefore, it is recommended that Summary Judgment be granted in favor of Defendant Powell.

## Miscellaneous Claims

### I. $10 Contingency Fee

Plaintiff further alleges that the Thomas County Jail Administration violated his constitutional rights by holding $10.00 of inmates' money "in case [they] need to see a doctor." O.C.G.A. § 42-5-55 specifically grants the Department of Corrections Commissioner the authority to establish "rules and criteria for a reasonable deduction from money credited to the account of an inmate." The $10.00 contingency fee is reasonable to

cover the possible medical costs of a inmate or prisoner and does not constitute an excessive deduction. Perhaps more importantly, Plaintiff has failed to identify any constitutional right allegedly violated by the contingency fee. Therefore, Plaintiff's argument regarding the reserved $10 contingency fee is without merit and no genuine issue of material fact remains to be determined. Thus, it is recommended that all Defendants be granted summary judgment as to this claim.

## II.  Separation of Misdemeanants and Felons

Plaintiff alleges that the Thomas County Jail Administration violated his constitutional rights by failing to separate felony offenders from misdemeanor offenders. The Affidavit of Virginia Williams, Chief Jailer at the Thomas County Jail, indicates that misdemeanants and felons are separated at the Thomas County Jail. (R-88, p. 3-4). Defendant stated in her Affidavit that "pre-trial detainees facing misdemeanors or convicted misdemeanants are confined in the 'A' wing of the Jail while pre-trial detainees facing felony charges or convicted felons are confined in the 'B' wing of the Jail." (R-88, p.3). Defendant Williams further states that if or when overcrowding occurs, "some felons may be housed in the A wing. However, under most circumstances, those felons are either convicted or charged with crimes of a non-violent, low security risk level, such as forgery." *Id*. Defendant Williams further stated that, at the time the Affidavit was prepared, Plaintiff was a pre-trial detainee being held on a felony charge of burglary. (R-88, p. 3, R-89, p.2). Plaintiff Crum was incarcerated in dorm B-3, which held pre-trial detainees charged with felonies or whom had been convicted of felonies. (R-88, p.3). Defendant Williams stated that there were "no

inmates confined in B-3 that are not pre-trial detainees charged with or convicted of felonies." *Id*. Defendant Williams stated that upon notification that an inmate confined as a pre-trial detainee in B-3 has been convicted, said inmate is then transferred from B-3 to dorm B-6. *Id*.

Presumably, any inmate that might have a claim regarding their safety as to co-mingling in the housing of felons and misdemeanants would be those charged with lesser, non-violent offenses, such as misdemeanor offenders. Plaintiff, however, was in the Thomas County Jail on charges of burglary, which is a felony. Plaintiff did not argue that he was being held with or harmed by a dangerous misdemeanant, nor did the court find any evidence of such in the multitude of filings. Furthermore, Plaintiff does not have standing to assert any alleged violation of another inmate's constitutional rights. As Plaintiff has failed to establish a violation of any constitutional right, no genuine issue of material fact remains to be determined. Thus, it is recommended that Defendants be granted summary judgment as to all claims related to the housing together of misdemeanor and felony offenders.

## III. Medical Staff and Medications

Plaintiff asserts that his constitutional rights were violated because the Thomas County Jail puts inmates at the "mercy of the [administration] for doctor[s] to show up," failing to have "R.N. nurses on duty at all," having guards pass out medication and "deny[ing] over the counter medicines at will." (R-2). Plaintiff does not allege that he suffered any pain or injury from the aforementioned claims. Furthermore, there is no constitutional right to twenty-four hour access to a physician or nurse while incarcerated. Additionally, while it is statutorily

required that persons prescribing (physicians, etc.) and providing (pharmacists, etc.) prescribed medications be licensed for such, there is no statutory or constitutional right to have prescribed medication delivered by a medically licensed individual. Finally, there is no indication that Plaintiff even has standing to raise this issue as he has failed to provide evidence that he received either prescribed or over-the-counter medication while incarcerated at the Thomas County Jail. As no genuine issue of material fact remains, it is therefore recommended that Defendants be granted summary judgment on all claims related to the requirement of "on staff" medical personnel and the distribution of medication.

## IV. Number of Meals Served

Plaintiff alleges that his constitutional rights were violated because the Thomas County Jail did not serve lunches on the weekends. (R-2). The Constitution requires that prisoners be provided "reasonably adequate food." *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985), citing *Jones v. Diamond,* 636 F.2d 1364, 1378; *Newman v. Alabama,* 559 F.2d 283, 286 (5th Cir.1977). A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Id.*, citing *Smith v. Sullivan,* 553 F.2d 373, 380 (5th Cir.1977). Furthermore, O.C.G.A. § 42-4-44 states that "inmates shall be given no less than two substantial and wholesome meals daily." O.C.G.A. § 42-4-44 (West 2007). Plaintiff did not allege that he was served fewer than two meals a day, nor did Plaintiff allege that the meals served were not nutritious. Plaintiff's complaint therefore, appears to be that he was provided more than he is constitutionally and statutorily entitled to on weekdays and that he wants the same on the weekends. As it appears that the Jail was in compliance with

Georgia law and Plaintiff has failed to show that the Defendants violated any of his clearly established rights regarding this claim, no genuine issue of material fact remains. It is therefore recommended that Defendants be granted summary judgment as to this issue.

## Qualified Immunity

The Defendants claim that they are entitled to qualified immunity as to the allegations made by Plaintiff in this case. (R-37,38). Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established right of which a reasonable person would have known. In sum, qualified immunity is a guarantee of fair warning. *McElligott v. Foley*, 182 F.3d 1248 (11th Cir.). The Eleventh Circuit Court of Appeals has held that "The qualified immunity inquiry involves three steps: (1) the alleged conduct must fall within the scope of the discretionary authority of the actor; (2) if it does, we must then determine whether that conduct violates a constitutional right; (3) if so, we must inquire whether the asserted right was clearly established at the time of the alleged violation." *Tinker v. Beasley*, 429 F.3d 1324 (11th Cir. 2005); *citing*, *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002).

The Supreme Court has held that in a case against an officer in which the Plaintiff alleges a violation of his constitutional rights, the two requirements of this defense must be analyzed in the appropriate succession. *Suacier v. Katz*, 121 S.Ct. 2151, 2155 (2001). The first question is whether "[T]aken in the light most favorable to the party asserting the injury,

do the facts show that the officer's conduct violated a constitutional right?" *Saucier* at 2156; *Seigert v. Gilley*, 500 U.S. 226, 232 (1991). On the facts of the case, should they be established, if it is possible that a jury could find that a constitutional deprivation had occurred, the Court must then decide whether the right violated was clearly established at the time of the alleged wrongful acts. *Id.* at 2156. "The contours of the right must be sufficiently clear that a reasonable official would understand that he was doing violates that right." *Id.* Because Plaintiff alleges that his constitutional rights were violated, his claims were analyzed to determine if any of Plaintiff's allegations withstand their respective legal standards.

In *Saucier v. Katz,* the Supreme Court held that if none of the Plaintiff's constitutional rights were violated had the allegations been established, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 121 S.C. 2151, 2156 (2001). Here, such is the case. The Plaintiff has failed to prove that any of the rights guaranteed to him through the United States Constitution were violated by the defendants. As Plaintiff Crum has failed at the first prong, no additional analysis is required. Therefore, all Defendants claiming qualified immunity have met their burden and are entitled to such.

### Thomas County as Defendant

As stated previously, a successful § 1983 action requires that the plaintiff show he was deprived of a federal right by a person acting under color of state law. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Brothers, Inc v. Brooks*, 436 U.S. 149, 155-56, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). Defendant Thomas County is not a "person"

within the meaning of 42 U.S.C. §1983. In a 1992 decision, *Dean v. Barber,* the Eleventh Circuit held that a proper claim under § 1983 requires the Plaintiff to file suit against a "person"or entity capable of being sued. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). *See also Miller v. King*, 384 F.3d 1248, 1259-60 (11th Cir. 2004). To qualify as a legal entity, the party must be a **natural or an artificial person** or **a quasi-artificial person**, such as a partnership. If a named defendant or plaintiff is neither a natural person, a corporation, nor a partnership, the suit is improper. *Id.* at 649. The Georgia Supreme Court has held that this type of defect is not amendable. *Id.; see also, Board of Road and Revenue Commissioners of Candler County v. Collins,* 94 Ga. App. 562, 95 S.E.2d 758, 759 (1956). Therefore, it is recommended that Defendant Thomas County be granted summary judgment as to all claims.

### Injunctive relief

The Eleventh Circuit Court of Appeals has held that any claims regarding the conditions of his confinement made by an inmate who is requesting declaratory or injunctive relief become moot once the Plaintiff is transferred to another facility. *Spears v. Thigpen*, 836 F.2d 1327 (11th Cir. 1988); *citing, Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985)(holding that absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.)

In this case, the Plaintiff filed suit against the Defendants on October 11, 2006. (R-2).

On February 8, 2007, the clerk's office filed a letter sent by the Plaintiff informing the court that he had been transferred to the Thomas County Prison in Thomasville, Georgia. (R-78). Thus, Plaintiff is no longer an inmate at the Defendant Thomas County Jail. Pursuant to legal precedent, therefore, the claims made by Plaintiff in his complaint and amendments regarding injunctive relief fail to present any case in controversy. Thus, such claims should be deemed moot and it is recommended that all claim related to injunctive relief should be DISMISSED.

## CONCLUSION

To preclude summary judgment once the Defendants have provided evidence failing to show that any issues of fact remain, the Plaintiff must establish by going beyond the pleadings that there are still genuine issues of material fact to be resolved by a fact-finder. *See, Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). As stated above, genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. Federal Rule of Civil Procedure 56 provides that affidavits, among other discovery evidence, will be used in determining whether any issues of fact remain which should be submitted to the trier of fact for final determination. Having submitted sworn statements, the Defendants, as the moving parties, have met their burden of proof. That is, they have demonstrated to the court the basis for each of their motions which they believe show that there is an absence of any genuine issue of material fact. In response, when the burden of proving that the Defendants were not entitled to a judgment as a matter of law shifted to the Plaintiff, he failed to respond in a timely manner. The evidence was examined by this court

32

in a light more favorable to the Plaintiff, as is required by the holding in *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). For the aforementioned reasons, it is therefore recommended that Defendants' Motion for Summary Judgment be GRANTED.

It should be noted that two issues remain in this case from Plaintiff's October 20, 2006, Amendment to his complaint: 1) Plaintiff's claim of being placed in the "hole" without a hearing or due process; and 2) Plaintiff's claim that the Jail constantly ran out of hygienic items, which may involve issues of deliberate indifference to conditions of incarceration.

Plaintiff has numerous outstanding motions (R-14, 15, 16, 17, 18, 20, 21, 22, 23, 27, 29, 31, 39, 40, 46, 48, 51, 53, 55, 60, 61, 62, 63, 65, 70, 72, 73, 74, 75, 76, 77, 79, 80, and 81), all of which have been reviewed by the court for relevancy to the remaining issues. The court originally ordered the Defendants to respond to these motions until the number of filings by Plaintiff became staggering and the substance of the motions was noted to be more in the realm of general complaints than actual motions. Amongst the thirty-five (35) outstanding motions are: ten (10) Motions to Compel (R-48, 63, 72, 73, 74, 75, 76, 77, 79, and 80); five (5) Motions of Retaliation and/or Harassment (R-39, 46, 55, 70, and 81); four (4) Motions for Temporary Restraining Orders (R-15, 16, 40, and 51); three (3) Motions for Sanctions (R-22, 23, and 31); two (2) motions for Discovery (R-17 and 65); and several miscellaneous motions. Having recommended that Defendants' Motion for Summary Judgment be Granted, and finding that none of these motions are related to the remaining claims, it is recommended Motions R-14, 22, 29, and 61 be DENIED. Having found that none of the following motions

are related to the remaining claims, it is additionally recommended that Motions R-15, 16, 17, 18, 20, 21, 23, 27, 31, 39, 40, 46, 48, 51, 53, 55, 60, 62, 63, 65, 70, 72, 73, 74, 75, 76, 77, 79, 80, and 81 be DENIED as moot.

**ACCORDINGLY**, because it appears that Defendants are entitled to judgment as a matter of law, **IT IS THE RECOMMENDATION** of the United States Magistrate Judge that the Defendants' Motion for Summary Judgment filed on their behalf be **GRANTED** as to all Claims. Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff may serve and file written objections to this **RECOMMENDATION** with the United States District Judge, WITHIN TEN (10) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 2nd day of August, 2007.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mZc